THE HOBOKEN PRINTING AND PUBLISHING COMPANY, PLAINTIFF IN ERROR. v. GUSTAVE KAHN, DEFENDANT IN ERROR.

In mitigation of damages the defendant in a libel suit may show that he did not originate the calumnious charge.

On error to the Supreme Court.

For the plaintiff in error, *William S. Stuhr.*

For the defendant in error, *Collins & Corbin.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The ground of the action was a libel published by the plaintiff in error.

There is but a single exception relied on for the reversal of the judgment, and that is the offer of the publishing company that was the defendant in the suit, to prove that neither it nor its agent had originated the calumnious statement, but that it had been received from other persons in the way of common gossip.

This offer of proof was overruled by the trial judge, and in such action we think there was error.

In the books there is much contrariety of judicial opinion expressed, but in this state it is deemed that the rule of practice in the respect in question has long since been at rest. In my own experience, extending over a period of fifty years, it has never, to my knowledge, been called in question. The

admissibility of such testimony was sanctioned by the Supreme Court in a case that was fully considered and which had been argued by members of the bar whose learning and ability have never been surpassed by any of their successors. The decision referred to is that of *Cook* v. *Barkley*, of the date of 1807, and which is reported in 1 *Pen.* 169. Nearly fifty years afterwards, Chief Justice Green refers to this decision in terms that plainly show that, in his opinion, it had entirely established the rule of evidence in this particular. In his opinion in the case of *Sayre* v. *Sayre*, 1 *Dutcher* 235, he thus communicates his views, viz. : " Evidence touching the plaintiff's character, in mitigation of damages, may be offered to show that the defendant merely repeated rumors that were in circulation, and that the slander was not wantonly originated by him, with the view of showing the *animus* with which the words were spoken, in order to diminish the extent or to qualify the character of the defendant's motive, and thereby to diminish the damages. With this view the evidence was offered, and held by this court to be admissible in *Cook* v. *Barkley*, 1 *Pen.* 169, and with the same view it has frequently been admitted in the English courts."

Under these circumstances this court does not think that the subject is open to debate, and, consequently, the judgment must be reversed and a *venire de novo* awarded.

GARRISON, J. (dissenting). If *Cook* v. *Barkley*, 1 *Pen.* 169, be assumed to stand for the proposition that the defendant in a libel suit may, in mitigation of damages, show that in making the false defamatory statement he was engaged in the circulation of a current rumor, and if it be admitted that this court would feel bound to adopt this exposition of the law of libel where the publication was not stated to be as of rumor, the ancient decision would still be devoid of any possible application to the case in hand. No question of the existence of rumors, or of their repetition, is in any aspect before this court, nor was any such matter asked of any witness in the court below ; nor was any ruling made or charge given that

in the remotest degree tended to raise, or even to suggest, any question concerning the currency of rumors or the admissibility or effect of testimony with respect thereto.

On the contrary, the case was this: The defendant was the proprietor and publisher of a newspaper whose editorial agent, McCawley, accepted the story about the plaintiff from Collins, a local reporter. Collins had gotten the story from one Woods. At the trial the defendant was permitted to put McCawley on the stand to testify to what Collins told him; then Collins was allowed to tell what he said to McCawley, and that his informant was one Woods. Woods was then sworn, and asked to give the conversation between Collins and himself about plaintiff. This was objected to, and the ruling of the court sustaining the objection to this line of proof constitutes the sole bill of exceptions upon which the reversal of this judgment can rest.

It will be perceived that no question of common rumor arose, or was at all involved, but that the contention of the defendant was that if Woods, in the course of a conversation with Collins, communicated to him the falsehood against the plaintiff, that circumstance would be relevant testimony in mitigation of the amount of damages the plaintiff should recover. I think it is safe to say that no theory can be suggested upon which this proof could be relevant evidence, and that no authority for its admission for any purpose by any court can anywhere be found.

The course pursued by the trial court was, in my opinion, entirely free from legal error, and the resulting judgment free from any reversible imperfections.

I am instructed by Justices Van Syckel and Magie, and by Judges Talman and Smith, to say that they concur in the views expressed in this memorandum.

*For affirmance*—GARRISON, MAGIE, VAN SYCKEL, SMITH, TALMAN. 5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GUMMERE, LUDLOW, BOGERT, BROWN. 6.